# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SHERRY R. C.,[1] | )<br>) |
| **Plaintiff,** | )<br>) |
| | ) **CIVIL ACTION** |
| v. | )<br>) **No. 23-2397-JWL** |
| MARTIN O'MALLEY,[2]<br>**Commissioner of Social Security,** | )<br>)<br>) |
| **Defendant.** | )<br>)<br>) |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Social Security Disability Insurance (SSDI)[3] benefits pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act).

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On December 20, 2023, Mr. O'Malley was sworn in as Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. O'Malley is substituted for Acting Commissioner Kilolo Kijakazi as the defendant. Pursuant to the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

[3] Plaintiff's Brief asserts this case "involves a claim for Supplemental Security Income Benefits (SSI) Under Title XVI of the Social Security Act," but she cites no record evidence to that effect. The record reveals Plaintiff made an appointment for July 16, 2021 with the Agency to apply for SSI benefits (R. 257-58) but the only application filed on July 16, 2021 was for SSDI benefits. (R. 259-65). In any case, because the court affirms the ALJ's denial of benefits, the question is moot.

Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.     Background**

Plaintiff protectively filed an application for SSDI benefits on June 23, 2021.  (R. 18, 259).  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the residual functional capacity (RFC) assessed by the ALJ is neither based on the correct legal standard nor supported by substantial evidence.  (Pl. Br. 31-38).

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  Consequently, to overturn an agency's finding of fact the court "must find that the

evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or

3

equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses the claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, the claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the errors alleged in Plaintiff's Social Security Brief.

**II.  Discussion**

Plaintiff argues, "the ALJ failed to: (1) evaluate the intensity and persistence of [Plaintiff's alleged] symptoms; (2) determine the extent to which these symptoms affected [Plaintiff's] ability to perform work-related activities; (3) consider the seven factors set forth in the regulations and SSR [(Soc. Sec. Ruling)] 16-3p in evaluating the intensity, persistence, and limiting effects of these symptoms; and (4) provide specific reasons, clearly articulated, for the weight given to Plaintiff's allegations."  (Pl. Br. 34-

4

35). She argues, "The ALJ never explains his conclusions nor link[s] his conclusions to any specific medical evidence, he simply picked page numbers from Plaintiff's Medical Records and he does not explain how these pages support his conclusion." Id. at 35. She argues he failed adequately to articulate how Plaintiff's alleged symptoms were inconsistent with her daily activities and the medical evidence or how such sporadic and limited activities provide a basis to discount her alleged symptoms. Id. 36.

Finally, Plaintiff argues the ALJ used the same language to discount all the medical opinions, and "[s]ince the language was recycled for each provider, it is unclear why a particular opinion was persuasive, unpersuasive, or partially persuasive." Id. 37. She concludes the decision does not present minimal findings in this regard, "It merely recites a conclusion and then inserts selected pages from Plaintiff's medical records, without ever explaining how these selected pages support his conclusions. The analysis in his Decision [sic] therefore does not permit any review at all." Id.

The Commissioner argues the ALJ reasonably determined Plaintiff's allegations of disabling symptoms were inconsistent with the record evidence. He points out the ALJ must explain his reasons for finding Plaintiff's allegations of symptoms inconsistent with the record evidence, but he need not provide a factor-by-factor evaluation. (Comm'r, Br. 11) (citing Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000)). He notes the ALJ discussed objective medical evidence which was inconsistent with Plaintiff's allegations and physical examinations which did not reflect disabling functional limitations. Id. 13-14 (citing R. 389, 775, 959, 1137, 1144, 1161-66, 1227).

5

The Commissioner notes the ALJ discussed MRIs done in October 2022 and December 2022 showing potentially disabling problems with Plaintiff's lumbar and cervical spine, respectively.  (R. 25, 26).  But he noted that a neurosurgeon, Dr. O'Boynick, "found that while Plaintiff had some decreased sensation, she was able to heel and toe walk, her motor strength was 5/5 and equal bilaterally, her reflexes were normal (2/4), and her straight leg raise test was negative" (Comm'r Br. 14) and "stated that Plaintiff's December 2022 neck MRI was 'mildly' abnormal, but that she was not in need of surgical intervention on her neck."  Id. 15.

The Commissioner points out the ALJ discussed Plaintiff's activities of daily living and found "her reports of pain which was so severe that she spent most of the day in bed four to five days each week," inconsistent with her testimony "she performed household chores like sweeping, vacuuming, and doing laundry (although she needed help carrying the basket), prepared simple meals, drove for short distances, [] used the internet … [and] went to the store three to four times per week."  Id. 15-16.  He points out, "The ALJ found that Plaintiff 'may not be able to engage in all of the activities that she did in the past and it may take her longer to perform the tasks, [but] she is more active than would be expected if all of her allegations were consistent with the record.'"  Id. 16.

The Commissioner acknowledges Plaintiff's arguments "the ALJ did not sufficiently articulate what evidence supported or contradicted the medical sources' opinions" and "'it is impossible to know how the ALJ weighed the many opinions of record from the medical professionals.'"  Id. 18 (quoting Pl. Br. 38) (footnote omitted).

He responds that Plaintiff's "arguments are undeveloped and unsupported," and should be deemed waived. (Comm'r Br. 18) (citing Bronson v. Swensen, 500 F.3d 1099, 1105 (10th Cir. 2007); and Eateries, Inc. v. J.R. Simplot Co., 346 F.3d 1225, 1232 (10th Cir. 2003)). He continues that, in any case, "the ALJ adequately evaluated the persuasiveness of the medical opinion evidence in compliance with the revised regulations. Id. (citing 20 C.F.R. § 404.1520c).

### A.  Standard for Evaluating Plaintiff's Allegations of Symptoms

The Tenth Circuit has explained the analysis for considering subjective allegations regarding symptoms. Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability. Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain. This court has stated: The framework for the proper analysis of Claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

Thompson, 987 F.2d at 1488 (citations and quotation omitted).

In evaluating a claimant's allegations of symptoms, the court has recognized a non-exhaustive list of factors which should be considered. Luna, 834 F.2d at 165-66; see also 20 C.F.R. § 404.1529(c)(3). These factors include:

7

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).[4]

The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating a claimant's allegations of symptoms which overlap and expand upon the factors stated by the court:  Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures Plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms.  20 C.F.R. § 404.1529(c)(3)(i-vii).

---

[4] Luna, Thompson, and Kepler, were decided when the term used to describe the evaluation of a claimant's allegations of symptoms resulting from her impairments was "credibility determination."  Although that term is no longer used, the applicable regulation never used that term and the procedure for evaluating a claimant's allegations of symptoms has not significantly changed.  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,871 (Jan. 18, 2017) (codified at 20 C.F.R. § 404.1529).  Moreover, the Tenth Circuit held its approach to credibility determination was consistent with the approach set forth in SSR 16-3p. Brownrigg v. Berryhill, 688 Fed. App'x. 542, 546 (10th Cir. 2017).  Therefore, the three-step framework set out in Luna, based on 20 C.F.R. § 404.1529 (2017) is still the proper standard to be used as explained in the regulations in effect on March 15, 2023, when this case was decided.  Nonetheless, to the extent, and only to the extent, that "subjective measures of credibility that are peculiarly within the judgment of the ALJ;" Kepler, 68 F.3d at 391; relate to an examination of a claimant's character, it is specifically prohibited by SSR 16-3p, and is no longer a valid factor to be considered.

The court's review of an ALJ's evaluation of Plaintiff's allegations of symptoms is deferential. It is generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). Such "determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.

**B.     Analysis**

The ALJ explained he evaluated Plaintiff's allegations of symptoms in accordance with 20 C.F.R. § 404.1529 and SSR 16-9p. (R. 24-25). Although the ALJ framed it as a two-step process in conformity with the Commissioner's phrasing in the regulation and SSR 16-9p, that "two-step" process involves addressing each of the three questions laid out in Luna, Thompson, and Kepler above. Plaintiff's allegation the ALJ did not evaluate the intensity and persistence of her symptoms is directly contradicted by the ALJ's finding her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [his] decision."

The ALJ summarized Plaintiff's allegations of symptoms. (R. 24-25). He explained the inconsistencies he found between Plaintiff's allegations of symptoms and the medical evidence and the daily activities she reported doing. Id. 25-27. He noted that despite Plaintiff's allegedly disabling symptoms and certain abnormal clinical signs and symptoms, the record contained medical evidence and other signs suggesting that Plaintiff's limitations were not as severe as alleged and therefore not disabling.

9

The ALJ noted Dr. Beal's examination "showed a normal gait, normal strength of 5/5 in the bilateral lower extremities, and deep tendon reflexes of 2/4;" Dr. Martin's examinations "showed normal motor strength and tone, normal gait and station, and grossly intact sensation;" and Nurse-Practitioner Downing's examinations showed Plaintiff "exhibited a normal gait and station and normal movement of all extremities." (R. 25). He noted Dr. Barner's consultative examination found

> gait and station were stable, and motor function was normal. An assistive device was not used. She had no difficulty getting on and off the examining table, mild difficulty with heel and toe walking, mild difficulty squatting and arising from the sitting position, and mild difficulty hopping. She had preserved range of motion in the right shoulder without noted impingement.

Id. 25-26.

The ALJ noted that although Plaintiff had gone to Dr. Bulcock[5] with worsening back pain and numbness and tingling in her upper extremities, the examination showed "normal gait and normal passive range of motion of the right hip." Id. 26. The ALJ noted that in spite of the findings of MRI imaging, the examination of Dr. O'Boynick, a neurosurgeon, "showed she was able to heel and toe walk. Motor strength was 5/5 and equal bilaterally. Sensation was decreased in the left L4 and L5 distribution, but deep tendon reflexes were 2/4, and straight leg raise test was negative." Id. Dr. O'Boynick's follow-up

> showed Patrick's maneuver was negative bilaterally, and she had good passive range of motion of the shoulders. Motor strength was 5/5 in the upper and lower extremities, and deep tendon reflexes were 2+/4 in the

---

[5] The ALJ addresses this physician as Jennifer Bullock (R. 26) but her treatment record represents her as Jennifer Bulcock, MD. (R. 1215, 1228).

> upper extremities and 2/4 in the lower extremities. Sensation was decreased in the left small finger and the right ring finger. Straight leg raise test was negative. He reviewed the cervical MRI performed in December 2022 and noted mild cervical spondylosis at C5-C6 and C6-C7 and that EMG revealed no carpal tunnel syndrome or ulnar nerve entrapment.

(R. 26).

The ALJ noted Plaintiff's daily activities reveal greater abilities than her alleged symptoms suggest.

> daily activities of performing chores (with breaks), including sweeping, vacuuming, doing yard work, preparing simple meals, driving short distances, and using the Internet are consistent with the ability to perform a limited range of light work. Although the claimant may not be able to engage in all of the activities that she did in the past and it may take her longer to perform the tasks, she is more active than would be expected if all of her allegations were consistent with the record.[6]

Id.

The ALJ summarized his consideration:

> The medical evidence of record supports a finding that the claimant remains capable of lifting/carrying twenty pounds occasionally and ten pounds frequently; standing and walking four hours in an eight-hour workday; and sitting six hours in an eight hour workday. I have considered all of the claimant's impairments and subjective assertions in finding the claimant should never climb ladders, ropes or scaffolds; should only occasionally stoop and crawl and frequently kneel and crouch; and should never work at unprotected heights, with moving mechanical parts, in vibration, and extreme cold. The claimant's lumbar spine impairments are further accommodated with only occasional use of foot controls bilaterally, and the claimant's right shoulder impairment and cervical stenosis is further accommodated with limitations for only occasional reaching overhead and frequently reaching in all other directions. The evidence does not support the presence of additional postural, environmental, manipulative, communicative or other physical non-exertional limitations further restricting the range of light work. The location, duration, frequency, and

---

[6] In context, the court understands the ALJ's last clause to mean "she is more active than would be expected if the record were consistent with all of her allegations."

11

>intensity of the claimant's pain and other symptoms were also considered. The record documents complaints of pain and that the claimant has sought treatment for her symptoms. However, the frequency and intensity of her symptoms as shown in the evidence do not support the need for greater limitations. Further, the aggravating factors were considered and accommodated in the residual functional capacity.

(R. 26-27).

The court finds it necessary to recognize that in the ALJ's RFC assessment when he limits Plaintiff to perform an activity frequently, that is a limitation. An activity which is not limited in the RFC may be performed constantly. An activity performed frequently is limited to between one-third and two-thirds of a workday and an activity performed occasionally is limited to one-third of a workday or less. SSR 83-14, 1983 WL 31254, *2.

As the summary of the ALJ's decision presented above reveals, contrary to Plaintiff's argument the ALJ evaluated the intensity and persistence of Plaintiff's symptoms, determined the extent to which her symptoms affect her ability to perform work-related activities, and articulated his reasons for the weight given her allegations. Moreover, the ALJ provided pinpoint citations to the record pages of the evidence upon which he relied, and the court's review of the evidence reveals that those pages confirm the propositions for which they were cited despite Plaintiff's assertion the ALJ "simply picked page numbers from Plaintiff's Medical Records and he does not explain how these pages support his conclusion." (Pl. Br. 35).

The ALJ stated he had applied SSR 16-9p and 20 C.F.R. § 404.1529 in evaluating Plaintiff's allegations of symptoms. Although the ALJ did not discuss each regulatory

12

factor contained in the regulation or in the ruling, as the Commissioner points out a factor-by-factor recitation of the evidence is not required. Qualls, 206 F.3d at 1372.

Although Plaintiff argues the ALJ's consideration of her daily activities was inadequate, the court's consideration of Plaintiff's Function Report (Ex. 5E) reveals the ALJ provided a fair summary of her activities, and the Function Report supports his finding she is more active than would be expected of an individual with the disabling symptoms she alleges. (R. 314-21).

Finally, the court finds it necessary to address Plaintiff's argument the ALJ did not adequately evaluate how the medical opinions conflict with Plaintiff's allegations of symptoms or why a particular opinion was persuasive, unpersuasive, or partially persuasive and his analysis does not permit review. (Pl. Br. 37). The court agrees with the Commissioner, who argues, "Plaintiff fails to proffer any specific challenge to the ALJ's evaluation of any medical source opinion" or "to identify any specific challenge to the ALJ's evaluation of the medical opinion evidence." (Comm'r Br. 18). Plaintiff has waived consideration of this issue by failing to develop any argument regarding it. Wall, 561 F.3d at 1066 (issue presented without developed argumentation is waived); Franklin Sav. Corp. v. U.S., 180 F.3d 1124, 1128 n.6 (10th Cir. 1999) (arguments presented superficially are waived) (citing Sports Racing Servs., Inc. v. Sports Car Club of America, Inc. 131 F.3d 874, 880 (10th Cir. 1997) (dismissing claims never developed, with virtually no argument presented)). Moreover, the ALJ's decision contains an extensive discussion of the medical source opinions of record and an explanation of his finding regarding the persuasiveness of each opinion. (R. 27-30). Plaintiff has shown no

error in the ALJ's evaluation of her allegations of symptoms or of the persuasiveness of the medical opinion evidence.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated August 7, 2024, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**